Mrs. Sanderson v. Leg Apparel Good morning, your honors. I would like to point out procedural errors and abuses of discretion by the lower court. And also, a point aside, my trial was not fair. It was not honest. My statements and concerns were ignored. As far as I'm concerned, the judge and defendants had their own trial, and I was just in the room. Okay, the summary judgment as a matter of law. I was awarded nine counts in the summary judgment. And when we got to final judgment, it was just two. But what is a matter of law? As I understand it, you go through summary judgment, and figure out the issues, apply the law, and then those issues that are unresolved or involve a matter of fact will go to trial. But this did not happen in my case. And also, all of the counts were on the jury ballot form. Every single last one. I think that was a procedural error. Also, that Judge Wood did not educate his summary judgment. I don't need to cross-motion. Let's see. And with the inadmission of my medical health statements, I think that was an error under Rule 803-4AB, exceptions to the rule against hearsay. I was told prior to my statements that they were completely admissible. When we got to that part, the judge just said they were hearsay. And it went very quickly, and before I knew it, I had no admissible medical statements. Even though one of my first psychiatrists, she died. And that made it completely admissible. So I have seen a psychiatrist, psychologist, psychotherapist, a psychiatric nurse. I've taken psychotropic medications, Prozac, bupropion, Valium, and Ambien. All that leads is to severe emotional distress. And as I understand what happened at trial, you could testify, the district court let you testify to your symptoms and to the fact that you were in treatment. But not to what the doctor diagnosed you as having. I don't know what that gobbledygook was, okay? I read the diagnosis. I understand the diagnosis. The doctors asked me to look up the diagnosis because when I was first diagnosed with OCD, I didn't believe it. But it's like, I don't have OCD. And then I looked it up, it's like, yeah, I have OCD. So, but they said, the court and the defendant said, I can't diagnose myself. The appellees have issues with my PTSD diagnosis that came up a lot in the medical reports. The appellees lied to their medical expert about the situation. They said that I refused to undergo a medical examination when, in fact, I volunteered, and I volunteered to pay for it. Oh, and with regards to my medical expert statements, Judge Woods was concerned that they were outdated and not specifically unaddressed. They were addressed to whom it may concern. I went back specifically to certain providers that I could reach to and had them rewrite their medical statements addressed to Judge Woods. And still not acceptable. Okay, Mr. Sanderson, we'll hear from your adversary on the other side. That means your time is up. Oh, it is? But we'll hear, we'll let them speak, and then you can have one minute of rebuttal. Does that work? Kind of not. Well, I think we also have your briefing. Remember that. Okay, I don't know what it is that you understand from my briefing, and what is your point of view from my briefing. I wanted to point out procedural errors and flagrant abuses of discretion. Thank you. Good morning, Honors. May it please the Court. Paxton Moore on behalf of Apoleis in this matter. Mr. Sanderson initiated his appeal following a five-day trial in the Southern District before the Honorable Judge Gregory Woods. The jury returned a unanimous verdict after a fair and complete trial. In his papers in here today, Mr. Sanderson appears to challenge several evidentiary determinations made by Judge Woods at trial. What about the treatment of the medical evidence? Mr. Sanderson was prohibited from putting on statements by doctors and other medical experts. Yes, Judge Lewis. Mr. Sanderson determined to not call any witnesses other than himself at trial, and as a result, he did not have the level of specialized technical knowledge required to testify as to any diagnoses or statements made by any medical provider to him about the symptoms he was suffering or the reasons why he was prescribed certain medication. He, not only that, such statements would have been considered hearsay, and any testimony from Mr. Sanderson as to those issues would have been in contravention of the issues identified by Federal Rule 403. So, on that basis, Judge Woods properly determined that Mr. Sanderson could not present testimony on those issues. What about the residual hearsay exception? The residual hearsay exception would not apply here because there would not be, first of all, sound guarantees of trustworthiness as to any of those statements. Those witnesses were not present in the courtroom to testify as to anything they may or may not have said to Mr. Sanderson, and for the vast majority of them, they could have been, which also adds to the probative value of that evidence as opposed to any other admissible evidence that would also not be able to be satisfied under this circumstance because, as I just mentioned, Mr. Sanderson could have admitted those witnesses to testify at court, but he chose not to. Moreover, allowing those statements to come in under the residual exception would usurp the gatekeeping function of the court identified in Federal Rule 702, as neither the court nor counsel for appellees was given an opportunity to cross-examine and test these witnesses' qualifications to offer the diagnoses that Mr. Sanderson sought to admit. The same is true as to the records, letters, correspondence from these providers that Mr. Sanderson sought to admit as exhibits at trial. These are de facto hearsay statements that Mr. Sanderson sought to bring in through his own testimony and not the testimony of these witnesses themselves. As for summary judgment, Mr. Sanderson did not himself move for summary judgment. So when Judge Woods issued a determination granting in part and denying in part defendants' motion for summary judgment in its entirety, he's not making a determination that Mr. Sanderson is entitled to judgment as a matter of law on those issues he's denying. All he's doing is determining that they're a fact issue and that such issues need to be tried before a jury, which they were, and the jury rendered a unanimous decision. Mr. Sanderson is not correct that all charges were on the jury ballot, only the charges that survived summary judgment were listed on the jury ballot. As far as Mr. Sanderson's State Division of Human Rights report, Judge Woods properly determined that that probable cause finding was inadmissible on the basis of hearsay and concerns under Rule 403. Would that report be a public record, the New York State Division of Human Rights report? It may be considered a public record. So it was a mistake to exclude it as hearsay. Maybe it was properly excluded under Rule 403. Yes, Your Honor, and other courts within the Second Circuit have addressed this issue and have found that admission of administrative reports of this kind tend to be cumulative. The testimony at the operative trial caused juror confusion, result in countless, many trials as to the sufficiency of the administrative agency's review of the allegations, and therefore it's frequently determined to be inadmissible under Rule 403. Mr. Morgan, were you trial counsel? Your Honor, myself and my co-counsel, Maureen Stampler, trial counsel. Mr. Sanderson's last claim is that there was an ex parte communication between trial counsel and the judge. Yes, Your Honor, and we addressed that in our response recently. Yes, you do, and I'm interested in what the response is. Your brief on page 17 responds by saying, Sanderson does not identify any such ex parte conversation in the record. That's your response. Have you ever seen a record that contained an ex parte conversation? Not necessarily, Your Honor, but we also responded in our, he made a motion last week or two weeks ago, to which we've already responded, in which we also argue any discussion as to the sufficiency of race-based evidence offered by Mr. Sanderson was discussed in the context of an oral Rule 50 motion in front of Judge Woods and Mr. Sanderson, that Mr. Sanderson was offered an opportunity to respond, that to the extent any ex parte conversation did happen, which did not, Mr. Sanderson admits that whatever conversation he's alleging did occur, occurred outside the presence of the jury, Judge Woods submitted the race-based claims to the jury, and the jury made a ruling on those race-based claims without ever hearing the supposed ex parte conversation. But how are we to know what happened in that ex parte communication? There was no ex parte conversation. How do we know that? Your Honor, in this situation, I guess it's my word against his. But when you say your word, there's no affidavit from you, is there? No, Your Honor. The brief says it's not in the record. Yes, Your Honor. Does that show it didn't happen because it's not in the record? No, Your Honor, but I'm being asked to disprove a negative, and what I can offer is that there is evidence in the record of conversations with Judge Woods as to the sufficiency of Mr. Sanderson's race-based evidence, and in those conversations, it's clear that that is... Were those ex parte or with him? They were with him, and he was given an opportunity to respond and did respond. So there were conversations with him, and the subject was taken care of? Yes. But what about the ex parte conversation that he says he saw? Your Honor, again, I maintain that there was no ex parte conversation. Well, I understand you're saying it as a matter of appellate advocacy, but your brief says it wasn't in the record. Yes, Your Honor. Well, how could it be? Well, because it didn't happen in the first instance, and of course, if it did happen, it wouldn't be necessarily reflected in the record, but there's nothing that Mr. Sanderson can identify or point to or state with any degree of certainty that this conversation did occur. I thought he said he saw it. He says he saw it, but... Isn't that evidence that it happened? Your Honor, I think there's several occasions during the course of trial when Mr. Sanderson would be present and hearing myself misstamp interacting with Judge Woods and choosing whether or not to respond to that conversation, but that does not make that conversation an ex parte conversation. I'm not sure I follow what you just said. In every conversation that myself or my co-counsel had with Judge Woods, Mr. Sanderson was present and had an opportunity to respond and discuss. That may be that there were several bench conferences where he was present. Every bench conference he was present. He's not talking about those. I understand, Your Honor. He's talking about the one he saw where he was not present. And, Your Honor, the only conversations that myself and my co-counsel had with Judge Woods were in the context of either sidebars at the bench or during oral presentation of Rule 50 motions. In every one of those conversations, Mr. Sanderson was present and had an opportunity to respond. Well, that isn't what your brief said. Your brief said the answer is it's not in the record. Your Honor, we have submitted a separate brief on this specific issue in response to a motion made by Mr. Sanderson, and we have argued these additional points. And the reason that our brief only referenced the lack of existence of this record is because Mr. Sanderson only mentioned this in one passing phrase in his opening papers, and so we responded. Are you talking now about the motion to recuse? Yes, Your Honor. And in that, you talked about, well, you tell me. In that, I elaborate upon the points I'm making now, in that any conversation with Judge Woods was in a formal sidebar at the bench or Rule 50 argument as for judgment as a matter of law. And we specifically cite in those briefs segments of the transcripts where Mr. Sanderson was asked directly to respond to an argument made by defendants at trial and did, in fact, respond. So that's the one where he was present. Every one of these, he was present, Your Honor. Well, he says there was one where he was not present, that he saw. I understand that that is what Mr. Sanderson is saying, but every conversation that myself and my co-counsel had with Judge Woods was accurately transcribed in the record. Well, that may be. That may be. He says there was one, and you say it's not transcribed. I did not say that there was one that is not transcribed. No, that is not what I have said, Your Honor. You said the answer to his claim is that it's not in the record. I've said that that's because it didn't happen. There's no ex parte conversation that I had with Judge Woods at any point in time during the course of the five-day trial. Did you, in the district court, deny that it happened? This was never a claim made at the district court level. It was only made on appeal? Yes, Your Honor. So you're saying he's waived the claim? He's waived the claim, and it's not something that happened in the first instance. Well, I'd be a little more reassured if there was an affidavit saying it didn't happen. It's a little odd to have a brief say that an ex parte conversation is not in the record. I'm happy to submit an affidavit to the courts that there was no ex parte conversation under penalty of perjury. Well, that's up to the chief, the presider. Well, can I ask, in the next week, a week from today, you submit such an affidavit? I can do so, Your Honor. And we'll give Mr. Sanderson, you have an opportunity to respond to it, a week after that. Okay? All right. Thank you, Your Honor. We have your argument. Thank you, Your Honor. Mr. Sanderson, I said I'd give you one minute. You may want to address what you heard from your adversary. But remember, we have your papers, and we understand.  Speaking of my medical witnesses, I did not admit them because they were not inclined to testify. And I did not want to go through the process of forcing them and having a subpoena issued to them when they were not voluntarily participatory. Particularly during the deposition of one of my psychotherapists, a defendant, she was very rude, insulting, demeaning to my psychotherapist. And I did not want that to happen again. As far as the validity or the qualifications of my expert medical providers, they had statements years before that they could have evaluated. They stated all of their qualifications, the schools they went to. As far as the New York State Division of Human Rights report, the court erred in not applying the arbitrary and capricious test. And these are human rights experts. This is all they do. And two of them decided that I was discriminated on the basis of, I mean, retaliation and discriminated on the basis of race. And these were the same determinations that the judge found in his summary judgment. Yet somehow they did not migrate over to the final judgment. The ex parte conversation did happen. Court was not in session. I saw them. It was like the judge was here. No, the judge was here. Mr. Paxton was here. They were going over a transcript. Not with me. And I heard something about was black mentioned or was race mentioned. But I was not part of that conversation. And I witnessed it. So we have your argument, Mr. Sanderson. And we've set a schedule for both sides to address that point. So thank you for coming in today. Thank you both for your argument. And that'll conclude court this morning.